[Civ. No. 13502. First Dist., Div. One. Mar. 23, 1948.]

PHIL C. KATZ, as Administrator, etc., Appellant, v. DAVID KARLSSON, Respondent.

Henry F. Boyen, Frank J. Fontes and Robert E. Hatch for Appellant.

Edward F. Sullivan for Respondent.

WARD, J.—This is an appeal from an order vacating, annulling and setting aside a final decree of divorce. The motion to vacate was made upon an "affidavit of said defendant and cross-complainant, David Karlsson, . . . and upon all the pleadings, records, papers, files and judgments entered and filed in said action." In addition the testimony of defendant and his attorney was introduced.

Louise Luellah Karlsson and David Karlsson were married in November, 1925. In January of 1931, the parties separated and the husband commenced an action (No. 224936, Superior Court of the City and County of San Francisco) against his wife for divorce. He subsequently returned to the home and the parties resumed marital relations. The divorce action was thereafter dismissed. On June 3, 1936, the wife filed an action in the same county for divorce, alleging extreme cruelty. This action was numbered 266468. The parties continued to live together at their Downey Street home until on or about May 17, 1939, at which time the husband filed an answer and cross-complaint praying for a divorce and alleging the existence of certain community

property. This was followed by another "bed and board" reconciliation until approximately August, 1940, when the parties separated. The following month the husband caused to be served upon his wife and filed a notice of motion to show cause why her default to answer his cross-complaint should not be granted. She failed to appear; default was entered and a hearing was had on September 18, 1940. An interlocutory decree of divorce in favor of the husband was ordered. At some unspecified date the wife withdrew $900 from a bank account. An automobile—community property of the parties—was eventually sold by the wife with the husband's approval. On September 30, 1940, the Downey Street property, standing in the names of the husband and wife as joint tenants, with right of survivorship, was granted by deed to the wife by the husband. The latter claims that there was no relationship between the signing of the grant deed and the divorce. His position is that he deeded the property to the wife because he was going out to sea. "Many men did the same thing when they went to sea during the war and they never knew what was going to happen." The deed was recorded about two months before the disaster at Pearl Harbor. The interlocutory decree on the cross-complaint in favor of defendant was entered October 2, 1940, two days after the husband transferred his interest in the joint tenancy property to his wife. On the present hearing the husband testified that "We didn't mention nothing about the house in Court." The evidence covering a reconciliation after the filing of the interlocutory decree consists in testimony by the defendant that he went to sea on several long voyages and that when he arrived at the port of San Francisco he generally made his headquarters at a seaman's hotel, but he visited his wife and on several occasions remained overnight. After a lengthy voyage the husband returned to San Francisco and the Downey Street home to find that the wife had died some six weeks previously. The evidence is practically a replica of the affidavit in support of the present motion. Relative to matters subsequent to the issuance of the final decree, the affidavit sets forth "That subsequent to the separation of the parties last aforesaid, and on the 30th day of June, 1942, the said plaintiff and cross-defendant, Louise Luellah Karlsson, at her own request, and without notice to this defendant and cross-complainant, and without his knowledge, procured the entry of the final

decree of divorce in this action; that in support of her application therefor she filed the usual and necessary affidavit reciting that there had been no condonation or reconciliation between the said parties subsequent to the entry of said interlocutory decree of divorce.'' The same affidavit which is a part of the motion upon which the present order is based also sets forth ''That subsequent to the entry of said interlocutory decree of divorce, and on or about the month of February, 1941, this defendant and cross-complainant condoned and remitted the offenses committed against him by said plaintiff and cross-defendant, and that he restored said plaintiff and cross-defendant to all marital rights and the said parties resumed marital relations, and lived together as husband and wife, as they formerly did, until on or about the early part of the year 1942, at which time said parties again separated.'' There is no allegation that upon the condonation and remission of the offenses subsequent to the interlocutory decree defendant and cross-complainant attempted to set aside that decree or that there was any change or transfer made or request therefor by defendant relative to the Downey Street property.

As already mentioned the wife died and the only purpose of the present proceeding is to obtain the whole or part of the community property, particularly the Downey Street house.

■ The determination of a motion to set aside a final decree of divorce and the attending issues involved is a matter committed to the discretion of the trial court. If there is substantial evidence or reasonable inferences to be drawn therefrom to support the order, reviewing courts will not interfere. ■ The entry of a final decree is a judicial act. (9 Cal.Jur., § 115, p. 767.) ■ Following the same reasoning the determination of a motion to set aside a final decree is a judicial and not a ministerial act. ■ In the present case defendant and cross-complainant husband sought to show that the plaintiff and cross-defendant wife had perpetrated a fraud upon the court in obtaining the final decree upon an affidavit stating that there had been no reconciliation since the issuance of the interlocutory decree. By his own affidavit the husband had practiced a fraud in obtaining the interlocutory decree without mentioning previous reconciliations and without reference to the community property and the disposition thereof which was an issue raised in the pleadings. The good faith of the hus-

band, his entry and prosecution of the present motion with clean hands were necessarily questions to be weighed and determined by the trial court. If the *record shows upon its face* that the moving party has failed to act in good faith with the court, that is, has instituted a proceeding or motion with unclean hands, it is the duty of a reviewing court in the interest of justice to determine the propriety of the judgment, decree or order of the trial court.

Though legal form in procedure was adopted to obtain the interlocutory decree defendant did not inform the court in the divorce hearing that any community property was involved, and prior to the interlocutory decree as entered in the record did not inform the court that he had deeded his joint tenancy interest in the Downey Street property to his wife.

In this case the appellate tribunal does not consider or interfere with the weight of the evidence given in the trial court. It does not use a new scale of measurement to evaluate all of the evidence introduced. It does not determine the truthfulness of the affidavit of the wife averring that there had been no reconciliation, nor does it attempt to balance that affidavit against that of the husband setting forth that reconciliations had occurred before and subsequent to the final decree. The position of this court is that if the affidavit filed by the husband in support of the motion to vacate the final decree is false the husband may be guilty of an offense which by Penal Code is made a felony. If the averments in the affidavit are true then defendant's actions throughout the divorce proceedings are unconscionable as demonstrated by the admitted fact that the trial judge who granted the interlocutory decree to the husband was not informed of the disposition of the community property except that some reference was made to the fact that the wife had withdrawn community funds from the bank. ''When an interlocutory decree of divorce is procured by collusion of the parties to the action, equity will not interfere with the final divorce at the instance of either of the culpable parties. (*Hendricks* v. *Hendricks, supra* [216 Cal. 321 (14 P.2d 83)]; *Bancroft* v. *Bancroft,* 178 Cal. 359 [173 P. 579]; *Bruno* v. *Guglielmo,* 113 Cal.App. 148 [297 P. 967]; 15 Cal. Jur. 63, sec. 148.)'' (*Godfrey* v. *Godfrey,* 30 Cal.App.2d 370, 379 [86 P.2d 357], quoted with approval in *Ettlinger* v. *Ettlinger,* 46 Cal.App.2d 628, 632 [116 P.2d 482].) It is further said (pp. 632-633) in the Ettlinger case: ''Mr.

Justice Shaw in his concurring opinion [*Bancroft* v. *Bancroft,* 178 Cal. 359, 365 (173 P. 579)] . . . said: " ' . . . while it is to the interest of the state that divorces shall not be obtained by collusion between the parties, that interest does not extend so far as to prevent the operation of the doctrine that equity will not relieve a party from an improper judgment rendered upon his own invitation, upon full knowledge of the facts and without coercion, imposition, or fraud upon him.' "

If the plaintiff wife when she obtained the final decree did not inform the court of the reconciliation subsequent to the interlocutory decree she likewise committed a fraud upon the court, but that does not atone for the legal sins of the husband.

The "clean hands" rule is of ancient origin and given broad application. It is the most important rule affecting the administration of justice. "Equity denies affirmative relief for such conduct even though it thereby leaves undisturbed and in ostensible full legal effect acts or proceedings which would affirmatively be set aside but for such consideration.

"The maxim is based on conscience and good faith. It is not strictly or primarily a matter of defense, but is invoked on grounds of public policy and for the protection of the integrity of the court." (30 C.J.S. § 93, pp. 476-477.) "His acts need not have been such as to constitute a crime, be punishable, be 'actually fraudulent,' or be the basis of a cause of action. Within the purview of the maxim, the hands of the litigant are rendered unclean by conduct which is 'condemned and pronounced wrongful by honest and fair-minded men.' " (19 Am.Jur. § 476, p. 330.) It is said in *De Garmo* v. *Goldman,* 19 Cal.2d 755, 764-765 [123 P.2d 1]: "Any unconscientious conduct upon his part which is connected with the controversy will repel him from the forum whose very foundation is good conscience. (*Johnston* v. *Murphy,* 36 Cal.App. 469 [172 P. 616].) Nor will equity aid him who is guilty of breach of contract connected with the transaction concerning which he asks for a decree in his favor. (*Harrison* v. *Woodward,* 11 Cal.App. 15 [103 P. 933].)

"The rule in this regard is a fundamental one. (*Bennett* v. *Brown,* 206 Cal. 424 [274 P. 532]; *Young* v. *Young Holdings Corp., Ltd.,* 27 Cal.App.2d 129 [80 P. 2d 723]; *Barr* v. *Smith,* 97 Cal.App. 398 [275 P. 861].) It was succinctly explained in *Allstead* v. *Laumeister,* 16 Cal.App. 59, 64 [116 P. 296], where the court, quoting from Pomeroy's Equity Jurisprudence, said that ' "whenever a party, who, as *actor,*

seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him *in limine*; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy." ' (See, also, *Richman* v. *Bank of Perris*, 102 Cal.App. 71 [282 P. 801].)

"The action of equity courts in this interposition on behalf of suitors for any and every purpose and in their administration of any and every species of relief, is guided and regulated by this principle. It differs from the maxim, 'he who seeks equity must do equity' in that the latter assumes that different equitable rights have arisen from the same subject matter or transaction, some in favor of plaintiff and some in favor of the defendant so that the plaintiff is required to recognize and provide for defendant's rights and his relief is granted only upon a showing that defendant's rights are protected. Therefore, as the very foundation of an equity forum is good conscience, any really unconscientious conduct connected with the controversy to which he is a party is sufficient justification for the court to close its doors to him, nor does the fact that a plaintiff may have no adequate remedy at law justify disregarding the maxim. (*Miller* v. *Kraus*, [Cal.App.] 155 P. 834.) The burden is on the one coming into a court of equity for relief to prove not only his legal rights but his clean hands, and he may not rely on any deficiencies that may be laid at the door of the defendants. (*Richman* v. *Bank of Perris, supra.*)" (See, also, *Belling* v. *Croter*, 57 Cal.App.2d 296 [134 P.2d 532].)

■■■ In this case the record speaks for itself. It is replete with instances of collusion and condonation. It is an illustration of a well-prepared plan by the husband after the death of the wife, by having the trial court declare that there was never a divorce, to repossess property which had been deeded by the husband to the wife during her lifetime.

The husband's affidavit, particularly the paragraph referring to a reconciliation after the interlocutory decree shows a desire to obtain the use of his wife's body during her lifetime and her property after death. The affidavit also shows not only disrespect of good morals but contempt for the administration of justice. Public policy and the integrity of the court demand that acts showing such bad faith should not be approved and that the motion to vacate the final decree should

be denied upon the sole ground that the defendant and cross-complainant husband has, in legal parlance, proceeded with unclean hands. If the wife was equally at fault in filing the affidavit requesting the final decree, then the answer to the problem is that equity does not adjust differences between wrongdoers. (*Godfrey* v. *Godfrey, supra.*)

The order vacating, annulling and setting aside the final decree of divorce in *Karlsson* v. *Karlsson,* San Francisco No. 266468, is reversed.

Peters, P. J., and Bray, J., concurred.