[Civ. No. 6421. Fourth Dist. Aug. 22, 1960.]

HAZEL D. MORIARTY et al., Respondents, v. DAGNEY MORK CARLSON, Appellant.

Arthur F. H. Wright and Edwin C. Jeffries for Appellant.

James S. Marinos for Respondents.

SHEPARD, J.—This is an appeal from a judgment for plaintiffs in an action for declaratory relief by which plaintiffs (respondents herein) seek a declaration of the respective rights of the parties under a written agreement of sale of real and personal property.

In general substance, the facts and contentions of the parties are as follows: On October 14, 1954, defendant (appellant herein), as seller, and plaintiffs, as buyers, entered into a written agreement for the sale by defendant to plaintiffs of certain real and personal property located in the city of San Diego, for the total purchase price of $38,000. Said agreement required, *inter alia*, that plaintiffs pay defendant $100 per week to be credited first on interest at 6 per cent and balance to unpaid principal; that plaintiffs pay taxes before delinquency, utilities, maintenance and repairs; that time is of the essence of the contract; that when the unpaid principal is reduced to less than $21,000, defendant will con-

vey title to plaintiffs and take back a promissory note and deed of trust as security for the remaining unpaid balance.

Plaintiffs' complaint alleges the execution of said contract; continued occupancy of the premises thereafter under the contract; default in six weekly payments; continuance, after default, of payments and acceptance thereof by defendant; willingness of plaintiffs to pay all delinquent sums; initiation of escrow for payment of all unpaid principal down to a sum less than $21,000; notice thereof and request to defendant for a statement of unpaid balance, execution of grant deed and other necessary documents in accordance with the agreement; failure of defendant to make such statement of balance and to execute said documents for transfer of title; and asks determination of the rights of the parties.

Defendant's answer admits execution of the agreement of sale but alleges delinquent payments were discharged by bankruptcy proceedings filed by plaintiffs; that after the bankruptcy proceedings plaintiffs occupied the premises as tenants and all payments were paid and received as rent.

At the time the cause went to trial it appeared to the trial court that extensive accounting was necessary and the entire matter was, by stipulation of the parties and order of the court, referred to a referee. No shorthand reporter was requested by either party for the referee's hearings, and none was had. There is therefore no transcript of the evidence taken by the referee.

The referee found, *inter alia,* that the contract was executed as alleged; that plaintiffs made payments on the contract in the total sum of $24,474.80; that delinquency as of August 25, 1959, amounted to $925.20; that the unpaid balance on the contract as of September 29, 1959, was $22,781.79; that many payments were made late but defendant accepted same and never made a formal demand for payment of delinquent payments; that no notice of termination of contract was ever given by defendant to plaintiffs, nor did defendant ever attempt to retake possession of the premises; that plaintiffs did file petitions in bankruptcy October 15, 1957, and did not list on their bankruptcy schedules their interest in the real property, but did list $800 due defendant as rent; that defendant was present at the first meeting of the creditors at the bankruptcy court and did not inform the bankruptcy court that plaintiffs were purchasing the property from defendant under contract of sale; that plaintiffs assured defendant that she and the property would be protected respecting

the bankruptcy; that plaintiffs continued to make and defendant continued to accept the same payments after the filing of petitions in bankruptcy and defendant recorded such payments in the same manner as she had recorded payments on the contract of sale prior to bankruptcy; that plaintiffs offered, prior to the filing of this action, to pay the payments then delinquent on the contract.

The referee concluded, *inter alia*, that the contract is still in full force and effect; that when the balance due on the contract shall be less than $21,000 plaintiffs will be entitled to .conveyance of title from defendant upon tendering a promissory note and deed of. trust securing the unpaid balance; that defendant, by her actions in accepting late payments, waived the requirement that payments on the contract be made on time; that no actions of plaintiffs· during or in connection with the bankruptcy proceedings misled· defendant so as to estop plaintiffs from claiming their interest in .the contract and the real property which is the subject of this action. The referee's findings and conclusions were adopted by the court and judgment was entered in accordance therewith. Defendant appeals.

### Where No Transcript, Evidence Presumed Sufficient

First, it should be noted that since no transcript ·of the evidence taken before the referee was made available to the trial court nor to this court, and since the referee's findings were adopted by the trial court, such findings must be presumed to have been supported by sufficient evidence. (Code Civ. Proc., § 644; *Vaughan* v. *Caldwell*, 200 Cal. 572, 575 [253 P. 929] ; *Brodie* v. *Barnes*, 56 Cal.App.2d 315, 319 [1b]. [132 P.2d 595] ; *Klein* v. *Maddox*, 59 Cal.App.2d 141, 144 [2] [138 P.2d 28].)

### "Unclean Hands" Rule Applied Only Where Cause of Action Infected

Defendant first contends that plaintiffs, by filing their petition in bankruptcy and accepting the protection of the bankruptcy court abandoned any interest they had in the property in question. In this connection, she advances the argument that he who seeks relief from a court of equity must do so with clean hands; that the relief here sought is essentially equitable in nature and that plaintiffs, by their failure to report the property as an asset in the bankruptcy proceedings, are practicing a fraud on both the bankruptcy court

and this trial court. It is true that, as was said in *Lynn* v. *Duckel*, 46 Cal.2d 845, 850 [2] [299 P.2d 236],

"The rule is settled in California that whenever a party who, as actor, seeks to set judicial machinery in motion and obtain some remedy, has violated conscience, good faith or other equitable principle in his prior conduct, then the doors of the court will be shut against him *in limine*; the court will refuse to interfere on his behalf to acknowledge his right, or to afford him any remedy."

Defendant cites also *Katz* v. *Karlsson*, 84 Cal.App.2d 469, 474 [6] [191 P.2d 541]; *DeGarmo* v. *Goldman*, 19 Cal.2d 755, 764 [5] [123 P.2d 1]; *Stone* v. *Lobsien*, 112 Cal.App.2d 750, 756-757 [6a-7] [247 P.2d 357]; *Potter* v. *Boisvert*, 117 Cal.App.2d 688 [256 P.2d 625]; *McDougall* v. *O'Hara*, 129 Cal.App.2d 12, 14 [2] [276 P.2d 6]; *Thibodo* v. *United States*, 134 F.Supp. 88, 101 [28].

Each authority must, of course, be read in the light of the facts there before the court. In *Lynn* v. *Duckel, supra*, appellant had unlawfully bulldozed earth from an alley dedicated to pedestrian use. City authorities, learning of the danger to pedestrians, closed the alley to vehicular use, and erected barriers. When appellant sought mandatory injunction to compel removal of the barriers, the court held he was guilty of "unclean hands" on the very matter about which he sought relief, and denied injunction. In *Katz* v. *Karlsson, supra*, an order vacating a divorce decree was reversed where the record showed fraud by the movant in securing the very decree he sought to have vacated. In *DeGarmo* v. *Goldman, supra*, the rule of "unclean hands" was applied to the president of a corporation in an attempt by him to remove allegedly dishonest directors when it was shown that the president himself had defrauded the corporation of many thousands of dollars. In *Potter* v. *Boisvert, supra*, the rule of "unclean hands" was applied because plaintiff and defendant had deserted their respective spouses, come to California as husband and wife, and plaintiff deeded to defendant the realty subject of the action for the purpose of defrauding his lawful wife. In *McDougall* v. *O'Hara, supra*, the "unclean hands" rule was applied when plaintiff attempted to quiet title where he had falsely represented to defendant that a note given by plaintiff to defendant was, in fact, a deed of trust lien on the property in dispute. From *Thibodo* v. *United States, supra*, appellant quotes the maxim *ex turpi causa non oritur actio*, meaning that "from a base

cause, no action arises.'' There the owner of street improvement bonds whose lien had been destroyed by condemnation proceedings by the United States without notice to said owner, sought to recover the value of the bonds. Judgment was rendered against the United States by whose unconscionable action the owner's lien had been destroyed.

It will be noted that in the case at bar there is no finding that at the time the report to the bankruptcy court was made plaintiffs' equity had any liquidatable value to the creditors, nor that plaintiffs' failure to report the contract as an asset was from any intent to defraud the creditors. Furthermore, a perusal of the arguments of counsel before the trial court indicates there was evidence before the referee that plaintiffs' failure to report was due to an innocent misunderstanding by plaintiffs of the nature of their interest in the property. Had the trial court been convinced that there was actual or intentional fraud on the part of plaintiffs toward their creditors, the views of that court may well have been different.

In *Stone* v. *Lobsien, supra,* cited by appellant, plaintiff therein sought to quiet title to realty transferred to defendant. Defendant claimed the transfer was for the purpose of defrauding the welfare department, but the court pointed out that there was no evidence that the welfare department had actually been defrauded and that the evidence was susceptible of interpretation that plaintiff was innocent of any fraudulent intent. ██ In refusing to apply the ''unclean hands'' rule, the appellate court there said, at page 758 [8], ''But that rule applies *as a matter of law* only where the evidence is susceptible of but the one inference that the transaction was entered into with the intent to defraud.'' (Emphasis ours.)

In *Wiley* v. *Wiley,* 59 Cal.App.2d 840 [139 P.2d 950], in an action for annulment, defendant sought and the court refused to apply the ''unclean hands'' rule where plaintiff had had himself sterilized prior to marriage at defendant's request. ██ The court, at page 842 [3], quotes from *Bradley Co.* v. *Bradley,* 165 Cal. 237 [131 P. 750], as follows:

'' 'It is not every wrongful act, nor even every fraud, which prevents a suitor in equity from obtaining relief. His misconduct must be so intimately connected to the injury of another with the matter for which he seeks relief, as to make it inequitable to accord him such relief. It must have been conduct which, if permitted, inequitably affects the relationship between the plaintiff and the defendant, . . .' ''

In *Carman* v. *Athearn*, 77 Cal.App.2d 585, 598 [10] [175 P.2d 926], the court, in refusing to apply the "unclean hands" rule, said:

"The misconduct must infect the cause of action before the court. Relief is not denied because the plaintiff may have acted improperly in the past or because such prior misconduct may indirectly affect the problem before the court. A party may have relief in connection with a transaction itself untainted although his original title may have been tainted by improper conduct. These principles are well settled."

In *Allen* v. *Los Angeles County District Council of Carpenters*, 51 Cal.2d 805, 815 [337 P.2d 457], note 2, our Supreme Court said:

"Misconduct claimed to result in lack of clean hands will not bar relief unless it is closely connected with the matter in which the plaintiff seeks equitable assistance and is of such a prejudicial nature to the rights of another that it would be inequitable to grant him that assistance."

Other cases have used the same reasoning as that used in the foregoing citations. (*By-Buk Co.* v. *Printed Cellophane Tape Co.*, 163 Cal.App.2d 157, 168 [11] [329 P.2d 147]; *Tobola* v. *Wholey*, 75 Cal.App.2d 351, 358 [7] [170 P.2d 952].)

"UNCLEAN HANDS" RULE MUST BE TRIAL ISSUE

Furthermore, the plea of "unclean hands" was not made in the trial. A careful examination of the pleadings and the transcript of the arguments of counsel at the motion for a new trial indicates that defendant did not attempt at any time during trial to rely on "unclean hands." The sole purpose for which defendant used this fact was in an attempt to prove abandonment of plaintiffs' rights under the contract. It would be manifestly unfair to apply the rule unless the person against whom it is sought to be applied was apprised of the claim of "unclean hands" and afforded the opportunity to present such evidence as might bear on that issue.

"It is the general rule that equitable relief in the nature of the establishment of a resulting trust will not be granted where the proponent had the resulting trustee take title in the latter's name in order to defraud the proponent's creditors; the doctrine of unclean hands is the obstacle to the proponent's recovery. (Citation.) However, when we consider that the trial court had no opportunity in the instant case to pass on that defense as it was not pleaded or called to its at-

tention, we must conclude that it is not now available to appellants." (*Watson* v. *Poore,* 18 Cal.2d 302, 311 [6-5b] [115 P.2d 478].)

The same rule is followed in *Svistunoff* v. *Svistunoff*, 94 Cal. App.2d 651, 654 [6] [211 P.2d 352]; *Stone* v. *Lobsien, supra,* 758 [9]; *Sears, Roebuck & Co.* v. *Blade,* 139 Cal.App.2d 580, 594 [14] [294 P.2d 140].

### CONFLICT OF EVIDENCE ON ABANDONMENT

On the subject of abandonment, of course, as was pointed out hereinabove, findings of the referee and the court are sufficiently supported by the presumption that there was sufficient evidence to support such findings where no transcript of the evidence taken before the referee was available to this court. ▮▮▮ Moreover, it affirmatively appears from the transcript of the arguments of counsel before the trial court that there was evidence of the defendant's recordation after the bankruptcy proceedings, in her own books, of the payments on the contract exactly as she had done prior to the bankruptcy proceedings, crediting first to interest and then to principal. It also appears that she wrote a letter in 1958 saying that "The contract is quite binding." Thus, on the rule presuming the sufficiency of the evidence before the referee where no transcript of such evidence is available, as well as on the rule of conflicting evidence, this court could not hold the conclusion of the referee that the contract is still in full force and effect to be without support.

### FORM OF TENDER WAIVED IF NO OBJECTION

As points two and three, defendant appears to suggest that the finding of $925.20 arrearage on the part of plaintiffs is a substantial breach and that the record shows no tender by plaintiffs to defendant of said sum. However, the referee found that plaintiffs, prior to the filing of the action, offered to pay all payments delinquent on the contract; that defendant had waived the provision of the contract that time was the essence thereof, and had never declared the contract terminated. The whole tenor of defendant's pleading and arguments before the trial court clearly shows that she would not have accepted as contract payments such arrearages and that even had a formal tender of physical money been made of the delinquent contract payments, she would have refused it. Plaintiffs had found a buyer for their equity, they had opened an escrow for the purpose of making the sale, they had notified defendant thereof and had requested a statement of the bal-

ance and the execution of deed in order that the whole transaction might be closed with full payment to defendant of all the contract entitled her to. She not only failed to give them the statement of balance due, but also refused to put her grant deed into the escrow. There is no evidence that she ever objected to the form of the offer.

Where there is no objection by the payee to the form of the offer and the writing itself prescribes no particular form, a physical tender of the money itself is unnecessary. (Civ. Code, §§ 1496, 1501; Code Civ. Proc., § 2076; *Hunt* v. *Mahoney*, 82 Cal.App.2d 540, 546 [3-4] [187 P.2d 43] ; *Sheller* v. *Livingston*, 25 Cal.App. 572, 574 [144 P. 547] ; *Rose* v. *Hecht*, 94 Cal.App.2d 662, 665 [1] [211 P.2d 347] ; *Covington* v. *Clark*, 175 Cal.App.2d 449, 452 [3] [346 P.2d 229].)

Appellant has made no other points on appeal. We deem it unnecessary to discuss other points made by respondents.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 19, 1960. Schauer, J., and Peters, J., were of the opinion that the petition should be granted.