[Civ. No. 26728. Second Dist., Div. Two. June 3, 1963.]

SADIE JEAN BLACKMAN, Plaintiff and Appellant, v. BALDO M. KRISTOVICH, as Public Administrator, etc., Respondent.

Tendler, Cruce & Friedman and Thomas P. Cruce for Plaintiff and Appellant.

Harold Kennedy, County Counsel, and Henry W. Gardett, Deputy County Counsel, for Respondent.

FOX, P. J.—Mrs. Sadie Jean Blackman has appealed from (1) an order denying her motion to vacate a final decree of divorce granted her, and (2) a subsequent order denying her motion for reconsideration of her previous motion.

Appellant's original motion to vacate was based upon the ground that the final decree of divorce previously granted her was procured by extrinsic fraud, assertedly practiced on her and on the court, by her husband, Aviv Blackman, now deceased, and by duress of Blackman exercised on her.

The facts before the court below are contained in two declarations in support of the original motion: (1) one by appellant, and (2) the other by appellant's attorney, Meyer Litenberg; and (3) a declaration by appellant's daughter, Betty Jane Swales, submitted in addition to the first two in support of the motion for reconsideration. The fact picture presented by these three declarations and by the official records and filings in the divorce action which are contained in the clerk's transcript on this appeal may be summarized as follows:

On February 25, 1957, appellant filed a divorce complaint alleging, *inter alia,* that her husband had committed numerous acts of extreme physical and mental cruelty toward her, resulting in grievous mental and physical suffering. The filing date was less than five months following the date of the marriage of appellant and Blackman.

The divorce case was heard as a default, and an interlocutory judgment of divorce was entered on April 9, 1957. According to plaintiff's affidavit, from the time the husband had been served with the summons to the date of the interlocutory judgment, she and defendant resided together in the same house. She further says that after the entry of the interlocutory decree, for a period of approximately one year, she and defendant continued to live together as husband and wife; that during the latter part of this period, defendant went to the office of her attorney to inquire about the entry of a final decree; and that on being informed that an affidavit would be required, defendant requested the attorney to send such an affidavit to her.

Exactly one year after the entry of the interlocutory decree, appellant received by mail the affidavit for entry of the final judgment. She further avers that defendant threatened

her with violence, beat his own head against a wall and the floor, and threatened to commit further acts of violence against himself unless she signed the affidavit. Appellant agreed to sign it, and on the following day, she and defendant went to the attorney's office, where she signed the affidavit.

The attorney prepared the proposed final decree of divorce. Defendant told appellant and her attorney that he would file the affidavit and final decree, saving the attorney a special trip.

On that same day, April 10, 1958, defendant removed himself from the apartment he had been sharing with appellant. The final judgment of divorce was entered in the judgment book on April 23, having been signed by the judge on April 22. The affidavit bears a filing date of April 21.

Between April 11 and April 23, defendant telephoned appellant, saying he was sick, worried, disabled, and unable to take care of himself. He asked appellant to come to his residence and bring him back to the apartment they had previously shared. Appellant complied with defendant's request.

When appellant inquired of defendant as to the status of the affidavit and final decree, defendant told her that neither had been filed and both had been destroyed. He told her that if she would take him back and care for him, they would resume their marital status. They lived together until December 27, 1961, when defendant died.

Appellant believed that she and defendant were still married until one day before the latter's death. On that day, appellant's daughter went to the county clerk's office and inspected the records there; she found the final decree and advised her mother. Defendant died the next day, after having been ill for a little more than a month.

In the court below, appellant gave three separate grounds upon which she urged that the final decree of divorce be vacated: (1) duress allegedly practiced against appellant by defendant; (2) fraud allegedly practiced against appellant by defendant; and (3) fraud allegedly practiced by defendant upon the court. ▉ In her brief, appellant does not argue the first ground urged below. We may therefore assume that appellant has abandoned assertion of the question of duress. (*People* v. *Scott,* 24 Cal.2d 774, 783 [151 P.2d 517].) The only questions remaining for us to determine, therefore, are (1) whether defendant obtained the final decree of divorce

by fraud, practiced either on the court or on appellant or both; and (2) if so, was the court below in error in denying appellant's motion to vacate?

█ It is difficult to see how appellant can assert that the final decree was procured by fraud on the part of defendant. The fact picture reveals that appellant signed the affidavit she knew to be the condition precedent for obtaining a final divorce decree, that defendant represented to her that he intended to file the affidavit and obtain such a decree, and that defendant did just as he had represented he would do. The basic element of fraud, misrepresentation or concealment of facts (*Belden* v. *Henriques,* 8 Cal. 87; *Kallgren* v. *Steele,* 131 Cal.App.2d 43 [279 P.2d 1027]) is missing. █ The only act on defendant's part which could be placed in this category occurred when he informed appellant falsely that he had not filed the papers but had destroyed them. However, to urge that this misrepresentation was instrumental in the procurement of the divorce is to stretch credulity to the breaking point. Only if it be said that appellant might have acted to have the decree vacated (assuming other grounds existed, such as the duress she originally claimed) had it not been for defendant's representations, might appellant make out a case for vacation of the decree. Her remedy in that event, however, would be to urge those other grounds, basing excuse for her delay on belief of the misrepresentations of defendant. Appellant did in fact do this in the court below, but has abandoned the claim of duress on this appeal.

█ Finally, if it were alleged that defendant told appellant he had destroyed the affidavit prior to the date on which he filed it and then subsequently obtained the final decree, there might be good reason to say that the decree was obtained by defendant's fraud, even though it does not fit the situation usually encountered in the cases. (See, e.g., *Raps* v. *Raps,* 20 Cal.2d 382 [125 P.2d 826], where the spouse who was plaintiff in the divorce action and who signed the affidavit was the one charged with fraud.) The only material before the court below with reference to this question, however, is contained in appellant's declaration. She states that defendant made the representations concerning destruction of the affidavit "between April 11, 1958, and April 23, 1958. . . ." The clerk's transcript shows that the affidavit was filed on April 21 and that the judge signed the final decree and it was filed on April 22. Since appellant has failed to declare that defendant's representations occurred prior to the pro-

curement of the final decree, she has not, therefore, made out a case for such decree being obtained by defendant's fraud. Similarly, there is no case of fraud on the court made out on the basis of the misrepresentations of the husband.

■ There remains but one final question: Since the appellant and the defendant continued to live together "as husband and wife" for a full year following the entry of the interlocutory decree, may appellant now have the final decree vacated because of fraud on the court? ■ Normally, it is the duty of a court to deny a divorce if there has been, *inter alia*, a reconciliation and restoration of all marital rights to the offending party. (Civ. Code, § 116; *Hamburger* v. *Hamburger*, 60 Cal.App.2d 530 [141 P.2d 453].) ■ If these things occurred without the knowledge of the court which granted a final decree, then the court has an inherent power to "correct its own records and purge them of judgments fraudulently obtained." (16 Cal.Jur.2d, Divorce, § 145.)

■ But, it would seem that appellant is hardly in a position to urge this be done in the instant case. It was she who filed for divorce; it was she who obtained the divorce by default; it was she who signed the affidavit;[1] it was she who understood that the affidavit would be filed and a final decree thereby obtained. It ill behooves her now to say to this court that the final decree should be vacated because of fraud—since it was she who was, at least in part, guilty of the perpetration of that fraud.[2] In *Katz* v. *Karlsson*, 84 Cal.App.2d 469 [191 P.2d 541], vacation of a final decree of divorce was denied where the defendant husband sought to show that the plaintiff wife had perpetrated a fraud upon the court in obtaining the final decree upon an affidavit stating there had been no reconciliation since the issuance of the interlocutory decree. But, observed the court, "By his own affidavit the husband had practiced a fraud in obtaining the interlocutory decree. . . ." (*Katz* v. *Karlsson, supra*, at p. 472.) If a party to a divorce proceeding cannot urge the fraud of the other spouse because the former committed a different fraud, it would seem that *a fortiori* the same result must obtain where the party now before the court urges a fraud in which she herself

---

[1]The affidavit reads, in part: ". . . since the granting of said interlocutory judgment, (a) said parties have not become reconciled; (b) said parties have not lived or cohabited together. . . .'

[2]Since appellant has abandoned her claim that the final decree was obtained by the duress of defendant, we must treat appellant's acts as done of her own volition absent a claim to the contrary.

participated. ■ Even if the parties were ". . . equally at fault in filing the affidavit requesting the final decree, then the answer to the problem is that equity does not adjust differences between wrongdoers." (*Katz* v. *Karlsson, supra,* at p. 476.)

Affirmed.

Ashburn, J., and Herndon, J., concurred.

A petition for a rehearing was denied June 27, 1963, and appellant's petition for a hearing by the Supreme Court was denied July 31, 1963.