[Civ. No. 42620. Second Dist., Div. Two. May 23, 1974.]

DEBRA KESSLER, Plaintiff and Appellant, v.
LEWIS LAURETZ, as Co-executor, etc., et al.
Defendants and Respondents.

## COUNSEL

Ward & Heyler, Belcher, Henzie & Biegenzahn and Frank B. Belcher for Plaintiff and Appellant.

Buchalter, Nemer, Fields & Savitch and Howard P. Miller for Defendants and Respondents.

## OPINION

**FLEMING, J.**—Debra Kessler appeals the order of dismissal of her action against the estate of her former husband, Bernard Kessler, deceased, in which she sought to set aside a property settlement agreement and judgment of dissolution of marriage, reinstate an interlocutory judgment of dissolution, enforce an oral promise, impose a trust, and recover damages for fraud. The trial court sustained a demurrer to the complaint without leave to amend on grounds that the complaint was a sham and founded on unenforceable oral promises.

### BACKGROUND[1]

Debra and Bernard were married in New York in 1951. In November 1968 Debra filed a complaint for separate maintenance in the superior

---

[1]We take judicial notice of the proceedings in Kessler v. Kessler, Los Angeles Superior Court No. WED 14014. (Code Civ. Proc., § 430.30; Evid. Code, § 452, subd. (d).) The trial judge in the instant case presided in Kessler v. Kessler and also took judicial notice of those proceedings.

court in Los Angeles. In January 1969 she amended her complaint to seek a divorce, alleging that Bernard controlled more than $10,000,000 in community property. After a series of preliminary legal skirmishes, the court awarded Debra temporary alimony, child support, fees, costs, and custody of their four children; enjoined Bernard, who lived in New Jersey and worked in New York, from dissipating community assets; and appointed a receiver for certain of Bernard's assets to ensure satisfaction of the court's order. Bernard failed to appear, and in June 1969 the court granted Debra an interlocutory judgment of divorce which declared all of Bernard's property to be community or quasi-community property.

In December 1969 Debra moved to set aside the interlocutory judgment, declaring that she had visited Bernard in New Jersey in August 1969, they intended to reconcile, and she would move to New Jersey to resume cohabitation. The court set aside the interlocutory judgment conditioned upon a successful reconciliation.

In February 1970 Debra moved to reinstate the interlocutory judgment, alleging the parties had not reconciled and that Bernard had failed to provide adequate support for her and the children. After a series of continuances Debra filed an affidavit in November 1970 declaring that Bernard had promised to pay $100,000 for the debts she had incurred in supporting herself and the children; that she had caused the interlocutory judgment to be set aside on condition that Bernard pay her debts and in the hope the parties could reconcile; that she told Bernard they could not reconcile until he paid her debts and provided her with financial security; that Bernard had not performed and they had not reconciled. On 30 November 1970 the court reinstated the interlocutory judgment.

On 15 September 1971 Debra and Bernard executed a property settlement agreement, which provided in part:

"Irreconcilable and unhappy differences have arisen and continue to exist between the parties hereto which make it impossible to continue the relationship of Husband Wife. As a result of said differences, the parties separated in March, 1968, and ever since said date have been living separate and apart and intend to continue to live separate and apart.

". . . . . . . . . . . . . . . .

"The parties are desirous of making a full, complete and final settlement

of all of their respective property rights in all property now owned by them and of making *a full, integrated, complete and final settlement of any and all claims, past, present and future, against the other and the property and/or estate of the other,* his or her executors, administrators, successors and assigns arising out of the marital relationship, . . .

"All rights and claims that either party may have . . . are here and now and forever after settled by this agreement; and in consideration of this agreement, Wife has and does hereby release and grant to Husband as his sole and separate property all right, title and interest that she now claims or has or ever has had or ever could have or could hereafter acquire, to any property as community property . . . .

"This agreement is to be effective upon the signing thereof and as stated herein, is in full and complete settlement of all claims of the parties and in the event either party shall secure a final decree of divorce, this agreement will be offered in evidence and be made a part of any judgment. . . .

"In the event the parties hereto shall reconcile and resume the marital relationship whether by remarriage or not, this agreement nevertheless shall remain in full force and effect except as to the provisions thereof with respect to spousal and child support.

"Wife is the owner of certain Life Insurance Policies which are as follows: [Policies on Bernard's life in face amount of $950,000 listed.]

"Husband releases any and all claims of any kind of nature whatsoever to said insurance policies or for any amounts of premiums heretofore paid by him or on his behalf. *Husband shall have no obligation to pay any premiums in connection with the above policies.*

". . . . . . . . . . . . . . . . . .

*"Husband and Wife hereby waive any and all right to inherit the estate of the other at his/her death, or to take property from the other by devise or bequest, or to claim any right or interest in the property of the other,* . . .

*"This Agreement may not be altered, amended or modified except by an instrument in writing by both Husband and Wife."* (Italics ours.)

An inventory attached to the agreement showed that the community possessed assets worth approximately $2½ million. Pursuant to the agreement and in settlement of her community-property and spousal-support claims, Debra received a house and furnishings, a

car, personal possessions, and $1,100,000. In addition Bernard released to Debra all interest in the $950,000 face amount of insurance policies on his life.

Debra petitioned the court to amend the interlocutory judgment to include the provisions of the property settlement agreement. On 20 September 1971 she personally told the court she understood the agreement, its terms satisfied her, and she believed it fairly divided the community property. The court thereupon approved, ratified, and confirmed the property settlement agreement and incorporated its terms into an amended interlocutory judgment, and subsequently on 17 December 1971 the court entered a final judgment of dissolution of marriage.

## THE COMPLAINT

In July 1972 Debra instituted the present action against Bernard's estate. The operative allegations of her complaint are: after she reinstated the original interlocutory judgment in November 1970, Bernard fraudulently represented to her that if they could consummate a property settlement agreement, her debts would be paid and they would immediately reconcile. He fraudulently promised to provide in his will that she would receive half his estate. Debra believed Bernard and in reliance on his promises joined in the property settlement and petitioned the court to amend the interlocutory judgment. Bernard later fraudulently represented to her that he had provided in his will for her to receive half his estate, and therefore she should cancel $1 million in life insurance policies on his life. Acting on his statements and directions, Debra cancelled the life insurance policies. Bernard did not reconcile with Debra; instead he caused a final judgment of dissolution of marriage to be entered and executed a codicil to his will revoking all bequests to Debra. He died leaving an estate worth approximately $8 million.

Debra's complaint prays that the court set aside the property settlement agreement, the amended interlocutory judgment, and the final judgment; reinstate the original interlocutory judgment; enforce Bernard's promise to bequeath Debra half his estate; impress a trust on half his estate; and award damages of $4 million for half the community property and $1 million for the cancelled life insurance policies.

## DISCUSSION

The trial court appropriately dismissed the complaint as sham. A court has inherent power by summary means to prevent an abuse

of its process and peremptorily to dispose of sham causes of action. (*Estate of King,* 121 Cal.App.2d 765, 774 [264 P.2d 586].) To establish the artifice of a complaint, a court may take judicial notice of other judicial proceedings and of allegations in other pleadings. (*Byrne* v. *Harvey,* 211 Cal.App.2d 92, 106-107, 111-112 [27 Cal.Rptr. 110]; *Lee* v. *Hensley,* 103 Cal.App.2d 697, 709 [230 P.2d 159].)

The allegations of the complaint directly contradict all that previously happened in the dissolution proceedings. Debra pleads that she agreed to an unfavorable property settlement agreement because Bernard promised to reconcile and pay her debts, yet the property settlement agreement which Debra signed and offered to the court as fair and correct, states that she and Bernard did not intend to reconcile and that they executed the agreement as a full and final settlement of all claims against each other. The complaint alleges Bernard promised to will half his estate to Debra, yet in the property settlement agreement she explicitly waived all claims to Bernard's estate. In her personal representations to the court Debra asked the court to approve the property settlement agreement and did not advise the court that she was secretly relying on Bernard's oral promise to reconcile. The trial court could not ignore these obvious inconsistencies between the events that occurred earlier in court and the operative allegations of the complaint.

Debra contends the trial court erroneously made findings of fact and determinations of credibility in ruling on the demurrer. We disagree. The only credibility to be measured was that of the allegations in the complaint. As we have stated, a trial court possesses inherent power to dispose of allegations which, although valid on their face, are invalid when measured by facts of which the court may take judicial notice. (*Hills Trans. Co.* v. *Southwest Forest Industries, Inc.,* 266 Cal.App.2d 702, 710-711 [72 Cal.Rptr. 441].)

Debra argues that the provisions of the property settlement agreement should not be used to contradict the allegations of her complaint because Bernard obtained the property settlement agreement itself through fraud. The asserted fraud, however, does not go to the actual wording of the provisions in the property settlement agreement. Debra must concede knowledge that the provisions of the property settlement agreement, which she signed and tendered to the court, differed from the real terms of their agreement. Such being the case, Debra's own fraud on the court estops her from seeking judicial relief in reliance on fraud collat-

eral to her own. (*Katz* v. *Karlsson*, 84 Cal.App.2d 469, 472-473 [191 P.2d 541].)

A parallel and equally cogent reason supports the dismissal of the action. ■ "[A] party having agreed in writing to do a certain thing may not stultify his written agreement by claiming that, in fact, he relied upon the other party's oral promise that the terms of the agreement should not be complied with." (*Cobbs* v. *Cobbs,* 53 Cal.App.2d 780, 785 [128 P.2d 373].) If the law were otherwise formal execution and court approval of property settlement agreements would only waste the time of the parties concerned and the courts involved. ■ Debra seeks to enforce promises allegedly made by Bernard in conflict with the written terms of their property settlement agreement and her personal representations to the court. The assertion that Bernard fraudulently made those oral promises does not alter the inherent conflict between the promises and Debra's written and sworn statements.

■ Debra picks out one allegation in the complaint, that *after* she obtained court approval of the property settlement agreement Bernard urged her to cancel the life insurance policies and orally promised to will her half his estate, and she argues that her prior conduct did not contradict this one allegation. But even if the trial court were required to accept one assertedly valid allegation interspersed among a mass of invalid allegations, the complaint still fails to state a cause of action:

First, the alleged oral promise to devise property by will is barred by the statute of frauds. (Civ. Code, § 1624, subd. 6.)

Second, it is also invalid as an agreement entered into without consideration. (Civ. Code, § 1550.) Under the property settlement agreement Debra became the sole owner of the life insurance policies on Bernard's life and was obliged to pay the premiums on these policies. It was a matter of indifference to Bernard whether or not she kept the policies in force, and the decision between keeping the protection afforded by the policies as opposed to saving the expense of the premiums and realizing the cash surrender value of the policies remained hers alone. Debra did not act to her detriment but merely made a choice between two alternative assets—present cash on the one hand or contingent future benefits on the other.

Third, the complaint shows no grounds to avoid the statute of frauds, no unconscionable injury to one party, and no unjust enrichment to the

other. (*Fallon* v. *American Trust Co.,* 176 Cal.App.2d 381, 384 [1 Cal. Rptr. 386].)

Fourth, Debra made no showing of any right to rely on Bernard's statements subsequent to the time they had settled their financial affairs by a property settlement agreement and obtained an interlocutory decree of divorce. To the contrary, her own narrative of the history of distrust and controversy between the parties conclusively demonstrates that she had no right to rely on anything said by Bernard at any time after November 1970.

Fifth, the asserted oral agreement is likewise barred by the provision in the Civil Code that "[a] contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." (Civ. Code, § 1698.) Revocation of a duly executed property settlement agreement falls within this provision. Here, by the terms of the property settlement agreement the parties were given the power of testamentary disposition over their respective estates. An oral relinquishment of that right falls within the prohibition of the Civil Code.

Sixth, the property settlement agreement itself declared that it could be altered only by an instrument in writing.

In short, Debra had no reason to believe Bernard's promise after the execution and approval of the property settlement agreement, and no right to rely on any such promise. Bernard had nothing to gain from Debra's cancellation of the life insurance policies, and both the law and the terms of the property settlement agreement made the alleged oral promise to devise property by will unenforceable.

The order is affirmed.

Roth, P. J., and Compton, J., concurred.

A petition for a rehearing was denied June 17, 1974, and appellant's petition for a hearing by the Supreme Court was denied July 17, 1974.