[Civ. No. 66798. Second Dist., Div. Three. Jan. 26, 1984.]

BAXTER H. POND, Plaintiff and Appellant, v.
INSURANCE COMPANY OF NORTH AMERICA,
Defendant and Respondent.

COUNSEL

Sheldon R. Caplow for Plaintiff and Appellant.

Gibson, Dunn & Crutcher and R. Randall Huff for Defendant and Respondent.

OPINION

**KLEIN, P. J.**—Plaintiff and appellant Baxter H. Pond (Pond) appeals from a summary judgment granted by the trial court in favor of defendant and respondent the Insurance Company of North America (INA), foreclosing Pond's suit against INA for malicious prosecution.

We conclude that the trial court's decision was correct and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The dispute now before us arose out of declaratory relief and indemnity litigation concerning insurance coverage for the defense of a prior wrongful death suit filed after a small plane crash killed all persons on board. Pond was the insurance agent who issued the policy. He claimed he was wrongly sued for indemnity by the insurer, INA, following its settlement of the wrongful death case. INA's suit sought the settlement amount against him.[1]

The facts on appeal are as follows:

Pond was a general insurance agent who issued the INA aircraft liability policy through an INA licensed agency, Robert Beckham and Associates, in early 1971. Among other things, the policy included specifications of the minimum pilot training requirements (pilot minimums).

The customer was Mission Beechcraft, Inc. (Mission), an Orange County fixed based operator, which rented planes and provided pilots to members of the public. In 1970, Mission had a policy with a different insurer, Associated Aviation Underwriters (AAU). This policy specified that pilots were required to have 20 takeoffs and landings in the same make and model aircraft. Prior to 1970, Mission had an INA policy which specified higher pilot minimums in terms of hours and training.

In late fall of 1970, Pond was informed that Mission was not going to renew the AAU policy and was asked to quote rates on a new INA policy. During the latter part of 1970, there was a series of meetings regarding the policy at Mission's premises which were attended by Pond, INA underwriter William Stafford (Stafford) and Ken Clark (Clark), Mission's president.

In late December and early January after several phone conversations with INA representatives, Pond sent to Mission handwritten notes of a December

---

[1]Pond was covered by an errors and omissions policy.

29, 1970, phone conversation with Stafford so there would be a binder of Mission's coverage. The issue of pilot minimum requirements was abbreviated in these notes to *"same as before."*

Stafford told Pond on December 29 that the pilot minimums were to be the same as in a cancelled INA policy that was in effect in 1969. He then mailed to Pond a letter, dated December 30, but mailed December 31, describing rates and stating pilot minimums. Pond sent a letter to Mission, dated December 31, agreeing to coverage and attaching a copy of the old INA endorsement regarding pilot minimums. Pond did not disclose this latter fact during the original declaratory relief case, although he did testify that he thought he sent a copy of the Stafford letter.

On January 17, 1971, three days before the actual policy was received, one of Mission's planes crashed, killing the pilot and all four passengers. INA investigators agreed that the cause of the accident was pilot error, which would have made Mission liable. Therefore, INA defended Mission in the wrongful death actions brought by the decedents' survivors under a reservation of rights, on the grounds that the deceased pilot was not qualified under the pilot minimum standards enumerated in the 1971 INA policy. (The pilot would have qualified under the AAU policy standards.)

While the wrongful death action was pending, Mission filed a declaratory relief action against INA seeking a declaration of coverage under the 1971 INA policy. INA filed a cross-complaint also for declaratory relief and indemnity, subsequently amending the indemnity counts to join Pond and various other parties as defendants in the event that coverage was found to exist.

The wrongful death suit was settled, INA paying $110,000 and Mission paying $65,000. Mission dismissed its declaratory relief action, but INA prosecuted its cross-complaint to judgment. The theory of INA's indemnity action against Pond was that Pond's actions created the wrongful impression that pilot minimums were less stringent than the actual terms of the policy received by Mission on January 20, 1971, and that his negligent representation thereby created an ambiguity which may have caused INA to be liable for coverage in a trial on that issue. INA reasoned that but for Pond's actions in this regard, INA would not have considered itself vulnerable and would not have settled the wrongful death suit.

Pond testified early in the indemnity litigation that he never explained what "same as before" referred to. Mission representatives on the other hand testified that Pond and INA had agreed with Mission to replace the AAU policy with an INA policy with *equivalent* or less stringent pilot min-

imums than the AAU standards, and that Pond and INA had always represented that pilot minimums were to be the same as the less stringent pilot minimums in the AAU policy before Mission actually received the policy.

In the indemnity suit at a time after the settlement, the trial court found that Mission in actuality knew the pilot minimums were the more stringent ones, and that none of the cross-defendants did anything to mislead Mission as to the pilot minimums. This decision was based in large part on the fact that Mission was shown to have received the copy of the Stafford letter of December 30, which had been forwarded by Pond, before Mission agreed to coverage.

Having prevailed, Pond filed a malicious prosecution suit against INA, alleging that the cross-complaint for indemnity against him was prosecuted without probable cause, and with the knowledge that Pond was not responsible nor liable in the action.

It was during discovery in the malicious prosecution case that the December 31 Pond letter enclosing the indorsement from the old policy came to light.

Discovery also revealed for the first time that Pond's representations to INA in the spring of 1971 concerning his perception of the intended coverage had been influenced by Mission's counsel in the following manner: Pond had responded to an INA questionnaire, before the declaratory relief action was filed, to the effect that he thought the intended pilot minimums were those of the AAU policy; however, prior to giving this response to INA, he had written a *draft* response in which he stated that he thought the intended pilot minimums were those of the prior INA policy. This draft was not revealed until discovery in the malicious prosecution action.

INA moved for summary judgment on the grounds that there was probable cause for the suit and that no issue of material fact was disputed. The motion was later amended to add an unclean hands defense, based upon the later disclosed evidence. The trial court granted the motion on both grounds, entering a judgment in favor of INA, and Pond appealed.

## CONTENTIONS

Pond contends that the trial court erred in granting the summary judgment in that there were disputed facts concerning INA's disclosure to and reliance on counsel in filing the indemnity suit against Pond, and that INA's defense of "unclean hands" was improper in a malicious prosecution action.

INA reiterates that there were no issues of material fact in dispute, that Pond's factual contentions are disposed of in unopposed affidavits, and/or involve inadmissible evidence, and that Pond was guilty of unclean hands in failing to disclose crucial documents in the cases below, knowing that they would be strategically critical to INA's cases.

## DISCUSSION

### 1. *Summary judgment standards.*

The standards for summary judgment are set forth in California Code of Civil Procedure section 437c. ■ In order for a summary judgment to be granted, all the papers submitted must show that there is no triable issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law.

■ In making this determination, the court is to consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court and all inferences reasonably deductible from such evidence. (Code Civ. Proc., § 437c, subd. (c).) The motion shall be supported or opposed by affidavits, declarations, admissions, answers to interrogatories, depositions and matters of which judicial notice shall or may be taken. (Code Civ. Proc., § 437c, subd. (b).) ■ In a situation where a party is otherwise entitled to summary judgment, such judgment shall not be denied on grounds of credibility or for want of cross-examination of the witnesses providing affidavits or declarations. (Code Civ. Proc., § 437c, subd. (e).)

■ The court may deny summary judgment in its discretion, where the only proof of a material fact offered in support of the summary judgment is an affidavit or declaration made by an individual who was the sole witness to such fact, or where a material fact is an individual's state of mind, or lack thereof, and such fact is sought to be established solely by that individual's affirmation thereof. (Code Civ. Proc., § 437c, subd. (e).)

The trial court here granted INA's motion for summary judgment on all grounds stated in INA's moving papers. Such grounds were basically that there was no triable issue of fact: (1) As to whether INA had probable cause for filing the indemnity suit against Pond by virtue of its reliance in good faith on the advice of its counsel Patrick Sheehy (Sheehy), after making a full and fair disclosure of all material facts; and (2) as to whether Pond knowingly failed to disclose documents in the underlying litigation that he knew to be critical to INA's case, and thus was barred from relief in a malicious prosecution action against INA because of his unclean hands.

Because we decide the case based on the reliance of counsel defense, it is not necessary to reach the merits of Pond's claims regarding lack of probable cause to sue for indemnity.

2. *Reliance on counsel tantamount to probable cause in defense of a malicious prosecution action.*

■ The elements of a cause of action for malicious prosecution are (1) a favorable verdict for the plaintiff who was a defendant in the underlying proceeding, (2) lack of probable cause for the suit in the underlying case, and (3) malice. ■ Malice may be inferred from lack of probable cause. (*Albertson* v. *Raboff* (1960) 185 Cal.App.2d 372, 388-389 [8 Cal.Rptr. 398]; *Northrup* v. *Baker* (1962) 202 Cal.App.2d 347, 353-355 [20 Cal.Rptr. 797].) ■ Reliance upon the advice of counsel, in good faith and after full disclosure of the facts, customarily establishes probable cause. (*Brinkley* v. *Appleby* (1969) 276 Cal.App.2d 244, 246 [80 Cal.Rptr. 734]; *Schubkegel* v. *Gordino* (1943) 56 Cal.App.2d 667, 672-673 [133 P.2d 475].) We therefore address the evidence before the trial court on the issue of good faith reliance on counsel.

(a) *All material facts were disclosed.*

■ The statements in the declaration presented by Sheehy on the issue of INA's disclosure of material facts and Sheehy's recommendation to sue Pond for indemnity based on such disclosure were not disputed by Pond with any contrary evidence. Pond in fact conceded that the decision to sue Pond was Sheehy's, not INA's.

In his moving papers, Pond accused INA of failing to disclose three "material facts" to Sheehy: (1) That INA had not followed its usual procedures in obtaining pilot histories from Mission prior to issuance of the policy; (2) that nonlawyer claims adjusters had written a memo expressing the opinion that there might be coverage under the policy as written despite the failure of Mission to meet the pilot minimums, and (3) that INA had allegedly agreed with Mission through Stafford that the lower pilot minimums would apply.

Sheehy stated in detail in his declaration that such "facts" were in actuality disclosed to him well in advance of his decision to recommend action against Pond for indemnity. Pond provided no evidence to dispute this signed statement.

The trial court was thus well within its discretion in allowing the summary judgment as to this issue. (Code Civ. Proc., § 437c, subd. (e).)

When the facts are uncontroverted, probable cause is to be determined by the court. (*Montz* v. *Nevins* (1919) 40 Cal.App. 202, 206 [180 P. 537]; *Northrup* v. *Baker, supra,* 202 Cal.App.2d at p. 354.)

The only remaining area of potential factual dispute is that of *good faith reliance* on the advice of counsel.

(b) *There was no evidence properly before the trial court tending to show lack of good faith reliance on counsel.*

Pond contends there were facts in dispute as to the *good faith* reliance on counsel issue because of the claims adjusters' opinion regarding coverage, and because of an alleged request by INA for a second opinion from Sheehy's law firm.

The opinion as to coverage rendered by two claims adjusters who investigated the loss for INA was properly deemed inadmissible by the trial court as speculation by witnesses unqualified to act as experts, i.e., legal opinion of a lay witness. (Evid. Code, § 800; *Bowden* v. *Robinson* (1977) 67 Cal.App.3d 705, 720 [136 Cal.Rptr. 871].)

Pond's other allegation set forth that an earlier opinion letter respecting coverage and written by another attorney at Sheehy's firm was presented to INA, and disapproved by them, after which Sheehy wrote a second opinion letter. The source of this allegation was a discussion between Donald Moore (Moore), Pond's former attorney, and Van Hagenbaugh (Hagenbaugh) another attorney at Sheehy's firm in the context of a meeting on *another* INA case. INA's objection that the contents of this discussion were privileged and from another case were sustained by the trial court. Pond did not argue this point on appeal; therefore, we deem it waived. (*Henderson* v. *Security Nat. Bank* (1977) 72 Cal.App.3d 764, 769 [140 Cal.Rptr. 388].) Thus, the only possible bases on which Pond might claim that INA did not rely in good faith on the advice of its counsel have been removed from the litigation.

3. *Unclean hands.*

INA also argues that Pond is barred from his suit by the equitable doctrine of unclean hands in that he knowingly failed to disclose critical evidence in the first suit, which evidence would have had a significant effect on the settlement of that case, i.e., that INA would not have defended or settled the case were it able to conclude it had no possible exposure.

" 'The [unclean hands] rule is settled in California that whenever a party who, as actor, seeks to set judicial machinery in motion and obtain

some remedy, has violated conscience, good faith or other equitable principle in his prior conduct, then the doors of the court will be shut against him *in limine*; the court will refuse to interfere on his behalf to acknowledge his right, or to afford him any remedy.'" (*Moriarty* v. *Carlson* (1960) 184 Cal.App.2d 51, 55 [7 Cal.Rptr. 282], citing *Lynn* v. *Duckel* (1956) 46 Cal.2d 845, 850 [299 P.2d 236].)

The rule is qualified by the requirement that the party against whom the doctrine is sought to be invoked directly "infected" the actual cause of action before the court, and is not merely guilty of unrelated improper past conduct. (*Moriarity* v. *Carlson, supra,* 184 Cal.App.2d at p. 57.) The actions of the party alleged to have soiled hands must relate "directly to the transaction concerning which the complaint is made; i.e., it must pertain to the very subject matter involved and affect the equitable relations between the litigants." (*Fibreboard Papers Products Corp.* v. *East Bay Union of Machinists* (1964) 227 Cal.App.2d 675, 728 [39 Cal.Rptr. 64].) The doctrine is not restricted, however, to defense of suits in equity, but applies as well to suits at law. (*Ibid.*)

Here it is obvious that Pond's activities in INA's indemnity suit against him relate directly to the malicious prosecution action before the court because the indemnity suit is the entire basis of Pond's claim. INA's moving papers disclosed considerable evidence, to which Pond made no sustainable objection, that Pond knew of INA's intent that the higher pilot minimums applied at the time the policy was written, and that Pond was in fact not present during coverage discussions between Stafford of INA and Clark of Mission, even though he had stated in the declaratory relief suit that he was present and understood that the lower pilot minimums were to apply, since he left before pilot minimums were discussed. Furthermore, he did not disclose two documents—the December 31 letter from himself to Mission, to which he attached a copy of the pilot minimums from the old INA policy, and the draft response to INA's questionnaire which he had shown only to Mission's counsel and which contained directly contradictory statements as to his perception of the understanding as to coverage.

Pond's contention that INA and its attorney were negligent in failing to discover these documents in the prior litigation is without merit.

The only case authority upon which Pond relies in his moving papers and on appeal for this preposterous proposition was deleted from the Official Reporters by Supreme Court order dated September 16, 1981, which case did not stand for such a proposition in the first instance. (*Huene* v. *Carnes* *(Cal.App.).)

*Reporter's Note: Deleted on direction of Supreme Court by order dated September 16, 1981.

The coverage issue in the defense of the wrongful death case was whether the lower pilot minimums were the ones agreed upon, an issue left ambiguous by Pond's conduct. It was upon this basis that the first suit was settled and INA's detriment incurred, largely as a result of Pond's nondisclosures and misrepresentations.

The only issue remaining is whether, given the affidavits and other undisputed facts before the trial court, it can be determined as a matter of law that Pond is guilty of unclean hands and therefore barred from suit.

The undisputed facts as presented in the motion for summary judgment were that Pond failed to disclose two critical documents during the course of several years of litigation, which if timely disclosed, may well have changed the outcome of the indemnity action against him. ▓▓ ▓▓ ▓▓ ▓ Pond also stated in his depositions in the current case that he knew at the time of his earlier depositions that the pilot minimums issue was probably the most important in the case.[2]

Pond's motivation for his otherwise inexplicable conduct may have been the fact that he and Clark, Mission's president, were long time friends. They were both pilots and members of an exclusive flying club called the "Quiet Birdmen." Pond's younger brother was a shareholder of Mission, and his sister-in-law was employed there. It was known that if Mission had to bear the full loss in the wrongful death suit, Mission would probably be forced into bankruptcy.

▓▓ The equitable principles underlying the clean hands doctrine do not require a finding that Pond was guilty of perjury, concealment or other illegal conduct, "[f]or it is not only fraud or illegality which will prevent a suitor from obtaining equitable relief. *Any unconscientious conduct* upon his part which is connected with the controversy will repel him from the forum whose very foundation is good conscience." (Italics added; *DeGarmo* v. *Goldman* (1942) 19 Cal.2d 755, 765 [123 P.2d 1]; *Seymour* v. *Cariker* (1963) 220 Cal.App.2d 300, 305 [33 Cal.Rptr. 727].)

▓▓ At the least, Pond's conduct in bringing the malicious prosecution action could be characterized as classic "chutzpah." (*Behan* v. *Alexis* (1981) 116 Cal.App.3d 403, 406 [172 Cal.Rptr. 132]; *In re Messerschmidt*

---

[2]This evidence was properly admitted over Pond's objection that the questioning called for a conclusion of the witness. The question was relevant not for the importance of coverage in actuality, but for Pond's state of mind during the period he failed to disclose the information and changed his representation as to his understanding of which pilot minimums were to apply based on conversations with Mission personnel.

(1980) 104 Cal.App.3d 514, 517 [163 Cal.Rptr. 580].) At the most, it is something more.

While we have found no case arising on summary judgment which dealt with an unclean hands defense such as the one before us, we came across one arising in the context of a nonsuit granted on opening statement in which this court affirmed a defense verdict based on the doctrine of unclean hands. (See *Russell* v. *Soldinger* (1976) 59 Cal.App.3d 633, 645-646 [131 Cal.Rptr. 145].) Given the facts presented in the agreed statement on appeal, we find that the trial court was correct in determining that Pond was barred from his malicious prosecution action by his unclean hands as a result of his violation of principles of good faith and good conscience.

## CONCLUSION

The trial court was correct in its application of the law regarding summary judgment to the issue of INA's good faith reliance on counsel, as well as its unclean hands defense.

## DISPOSITION

Judgment is affirmed.

Lui, J., and Danielson, J., concurred.